ANDREWS et al. v. NATIONAL FOUNDRY & PIPE WORKS, Limited.

(Circuit Court of Appeals, Seventh Circuit.　January 11, 1894.)

No. 92.

1. WATER COMPANIES—MORTGAGE—FRANCHISE.
    A water company mortgaged, with covenants of warranty, "all the rights, privileges, immunities, franchises, and powers which were granted in and by" a certain city ordinance. *Held*, that the mortgage covered all franchises owned by the company and enumerated in said ordinance, whether the same were in fact granted by the city or by the state.

2. MUNICIPAL CORPORATIONS—POWER TO GRANT—FRANCHISE—WATER COMPANY.
    A city whose charter gives it "the general powers possessed by municipal corporations at common law," and also gives it express power "to provide for the erection of waterworks," has power to grant to a corporation a franchise to supply the inhabitants of the city with water.

3. APPEAL—APPELLATE JURISDICTION—PRELIMINARY INJUNCTION.
    A preliminary injunction made upon a prima facie showing is an "interlocutory order" of injunction, from which an appeal to the circuit court of appeals will lie.　Richmond v. Atwood, 5 U. S. App. 151, 2 C. C. A. 596, and 52 Fed. 10.

4. SAME—EFFECT OF REVERSAL.
    A decision on appeal, reversing an order granting a temporary injunction, is conclusive only of the rights of the parties upon the showing made in support of the order.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Creditor's bill by the National Foundry & Pipe Works, Limited, against the Oconto Water Company, S. D. Andrews, W. H. Whitcomb, Charles C. Garland, F. H. Todd, George W. Sturtevant, Jr., S. W. Ford, Matt S. Wheeler, A. J. Elkins, N. S. Todd, Minneapolis Trust Company, Oconto National Bank, City of Oconto, and Oconto City Water-Supply Company.

An order was entered appointing a receiver for the property of the water company and restraining the defendants from interfering therewith.　Defendants Andrews and Whitcomb appeal.

This appeal is from a preliminary order of injunction granted in connection with an order appointing a receiver of the property and effects of the Oconto Water Company.　By the terms of the order, the appellants, Andrews & Whitcomb, with others, were restrained "from holding, managing, or interfering in any way with the rights, franchises, property, rents, profits, bonds, and affairs of said Oconto Water Company and the said water plant in the hands of said receiver, and from asserting any right, title, or interest in the property or the rents, issues, and profits thereof, until the further order of the court." When this order was made, Andrews & Whitcomb were in possession of the waterworks, claiming title by purchase at a foreclosure sale under a mortgage made to them by the Oconto Water Company to secure the repayment of money loaned which was used in the construction of the plant.　The appellee, at whose instance the receiver was appointed and the injunction granted, was a judgment creditor whose execution had been returned unsatisfied.　For a detailed statement of the facts, reference is made to the opinion delivered in the circuit court, reported in 52 Fed. 29.　The mortgage under which the appellants assert title was executed in pursuance of the contract of September 13, 1890, whereby it was agreed that there should be a transfer in trust to the appellants "of the Oconto waterworks franchise as issued to said Oconto Water Company;" but, by its own terms, the mortgage or deed of trust was of

"all the rights, privileges, immunities, franchises, and powers, of whatsoever name or nature, which were granted unto the said Oconto Water Company in and by that certain ordinance passed by the common council of said city on the ninth day of July, A. D. 1890, being ordinance No. 153," etc.; following which the mortgage proceeds to say: "To have and to hold the said rights, privileges, immunities, franchises, and powers, and each and all thereof, unto the said Andrews & Whitcomb, and unto their heirs and assigns forever; and the said Oconto Water Company, for itself and its successors, hereby covenants and agrees to and with the said Andrews & Whitcomb that it has good right and lawful authority to sell, assign, transfer, and set over in the manner aforesaid all of said rights, privileges, immunities, franchises, and powers, and that it is the owner and holder of all thereof on the date hereof." The first section of the ordinance contains the granting clause, and reads as follows: "Section 1. That the Oconto Water Company, its successors and assigns, be and are hereby authorized, subject to the limitations herein or by law provided, to construct, own, maintain and operate water-works in the city of Oconto, to lay pipes for the carrying and distributing of water in any of the streets, avenues, alleys, lanes, bridges or public grounds of the city as now or may hereafter be laid out, to acquire and hold as by law authorized any and all real estate easements and water rights necessary to that end and purpose, with all necessary and proper buildings, wells, conduits or other means of obtaining water supply, with all necessary machinery and attachments thereto to supply the city and inhabitants thereof with good and wholesome water, suitable for fire and domestic purposes, and for this purpose may enter upon any street, avenue, alley, lane, stream, bridge or public ground under control of the city, to take up any pavement or sidewalk thereon, and make such excavations as may be necessary for the laying of such pipe and attachments; provided, that such use of such ground be made with the least practical inconvenience to the inhabitants of said city; that such excavations be guarded by barricades wherever necessary and lighted at night, and that such sidewalk, pavement or excavation be replaced by and at the expense of the grantee, its successors or assigns, in as good condition as before, as nearly as practicable, and with the least possible delay. Said grantee and its successors or assigns shall assume all risk of accidents arising from the construction and operation of said water works and shall save the city harmless from all damages therefor." The city of Oconto by its charter (chapter 56, Laws Wis. 1882) is given "the general powers possessed by municipal corporations at common law," and among other specified powers is authorized "to enact, enforce, alter, amend and repeal ordinances, rules and by-laws, for the benefit of the trade, commerce and health," and "to provide for the erection of water-works for the supply of water to the inhabitants of the city." By section 930a of chapter 125 of the Acts of 1879, every city of Wisconsin was authorized "to permit," subject to rules and conditions of its own choice, "the laying of pipes in the streets and alleys and the maintenance and use of such pipes for the purpose of conveying water," etc.

The Oconto Water Company was incorporated July 8, 1890, under the general law of the state, which required the articles of incorporation to contain a statement "of the business or purposes" of the organization; and, in compliance with that requirement, the articles stated that this company was formed "for the purpose of constructing and operating a system of waterworks within the city of Oconto, in Wisconsin, for supplying said city and its inhabitants with water for protection against fire, and for domestic, manufacturing, and other purposes." Upon an analysis of the several statutes and the ordinance referred to, the court below reached the conclusion that the water company received its franchises directly from the state and not from the city under the ordinance mentioned, and that the mortgage, and the decree of foreclosure and sale thereunder, limited as they were by their terms to franchises granted by the ordinance, vested the appellants with no interest in the property or franchises of the water company. Upon this point the court said: "At the threshold of the inquiry, the court is confronted with the question what rights Andrews & Whitcomb acquired under the agreement of September 13, 1890, the instruments executed pursuant thereto, and the foreclosure of the rights thereby acquired. The grant to them was of 'all the rights, privileges,

immunities, and powers, of whatever name or nature, which were granted unto the said Oconto Water Company by the ordinance of the city of Oconto.' What rights could the city lawfully grant, and what were granted? The solution of the questions depends upon the powers conferred upon that municipality. The city by its charter is vested with the general powers possessed by municipal corporations at common law, and with certain governmental powers specifically defined in its charter, and with authority to enact and enforce ordinances under the 'general welfare' clause usual in charters of municipal corporations, and specific power is vested touching various matters of municipal concern. Laws Wis. 1882, c. 56. The general power is conferred upon cities to borrow money and to issue negotiable bonds for the purchase or erection of waterworks. Rev. St. Wis. § 942. By chapter 125, Laws 1879 (Sanb. & B. St. § 930a), the common council of every city is authorized to permit, subject to such rules and regulations as may be imposed, the laying of pipes in the streets of the city, and their maintenance and use, for the purpose of conveying water or steam under the surface of the streets. By the general statute entitled 'Of Cities' (Laws 1889, c. 326; Sanb. & B. St. c. 40a), cities are authorized to own and operate waterworks, and to legislate on all matters with reference to their construction, operation, management, and protection (section 925N). In the chapter entitled 'Organization of Corporations' (Rev. St. Wis. c. 86), under which the Oconto Water Company confessedly had being, it is enacted that 'any corporation formed for the purpose of constructing and operating water-works in any city or village of this state may make and enter into any contract with such city or village to supply such city or village with water for fire and other purposes upon such terms and conditions as may be agreed upon, and may, by the consent of, and in the manner agreed upon, with the proper authority of such city or village, use any street, alley, lane, park, or public grounds for laying water pipes therein; * * * and any such city or village may, by contract duly executed by the proper authorities, acquire the right to use the water supplied by such corporation, or such portion thereof as it may desire, upon such terms and conditions as may be agreed upon by such corporation and the authorities of such city or village.' Section 1780, as amended. These are all the statutory provisions which I have been able to find touching the question of municipal authority and corporate franchise here presented.

"It may be difficult to enumerate the common-law powers of a municipal corporation. It is certain, however, that the conferring of franchises upon other corporations is not one of them. Under its charter, by a well-known principle of law, it can exercise no power not expressly granted or fairly to be implied. It may be that, by virtue of its duty to care for the public health and safety, a city has the power to contract for a supply of water; but it cannot, without express legislative authority, construct, maintain, or operate waterworks. Dill. Mun. Corp. (4th Ed.) § 27. Without like authority it cannot grant exclusive right to use the streets, and a distributing plant located in the streets is essentially a monopoly. The right to use the public highways for gas pipes or water mains rests in legislative authority, directed, granted, or delegated to municipalities. So, likewise, the right to operate waterworks is of legislative origin, and can only be conferred by a municipal corporation when expressly authorized by the supreme legislative power of the state. It cannot be doubted that the common council of the city of Oconto, in the enactment of the ordinance in question, entertained a broad and generous view of its own powers. It was pleased to confer, or attempt to confer, upon this water company, the power 'to construct, own, maintain, and operate waterworks in the city of Oconto, * * * to acquire and hold, as by law authorized, all real estate, easements, and water rights necessary to that end and purpose, with all necessary and proper buildings, with conduits or other means of obtaining water supply, with all machinery and attachments thereto,' in addition to the right to use the streets and public grounds of the city for its water mains and pipes, and undertook to regulate contracts and dealings between the water company and the inhabitants of the city, using water, and to bestow upon the company the right of access to the homes of consumers of water, and to regulate its exercise. If the right to confer these great privileges and franchises, and to exercise inquisitorial powers, can be pointed out, the-

ordinance is effective to the end designed. No ordinance, however, can enlarge, vary, or diminish the powers of a municipality.

"Whence came that power? I find no legislative warrant for it. The charter of the city does not confer it. No general law applicable to the city of Oconto grants it. The chapter entitled 'Of Cities' (Sanb. & B. St. c. 40a) was enacted in 1889 (Laws 1889, c. 326). It provides that no city then incorporated shall be affected by the provisions of the act, unless it shall adopt the same for its government in the manner provided. Sanb. & B. St. § 925d. The present charter of the city of Oconto was enacted in 1882. Laws 1882, c. 56. There is no suggestion in the record that the city of Oconto has ever adopted the provisions of the general law, and we are not at liberty to assume that it has. Failing such adoption, the city is not affected by, and derives no power from, that general law, assuming that the chapter has relation to waterworks owned and operated by a corporation other than the municipality, which may be doubtful. The city is therefore only authorized to permit the laying of pipes in the streets, and their maintenance and use. Sanb. & B. St. § 930a. That is not a grant of power to bestow a franchise, but permission to suffer an easement. The law of its incorporation confers upon the Oconto Water Company its franchise (1) to own and operate the waterworks; and (2) to use the streets of the city. Id. § 1780. The former power is without condition; the latter is subject to the assent of the municipality. The practical efficacy of the franchise may depend upon the discretionary act of the city. The franchise is not, however, derived from that discretion, but from the will of the legislature. The law authorizes the city to assent to the exercise of a power granted by the statute. The grant of power to the water company, as to the use of the streets, becomes operative only upon the happening of that contingency of municipal assent. That is not a grant of power to a city to confer a franchise. Sims v. Railway Co., 37 Ohio St. 556. The matter is somewhat analogous to the case of an act of the legislature taking effect only upon the assent of the people expressed at the polls, which is now generally held to be valid, upon the ground that the law derives its potency from legislative will, and not from the assent of the poll. So, here, the right to use the streets was conferred upon the Oconto Water Company by the law of its incorporation, subject to the contingency of the assent of the city. The franchise emanates from the legislature, not from the municipality. The ordinance is not an exercise of legislative power, but of the right to contract. City of Indianapolis v. Gas-Light Co., 66 Ind. 396.

"The case of State v. Madison St. Ry. Co., 72 Wis. 612, 40 N. W. 487, is not in conflict. The ruling there was to the effect only that, considering the terms of Rev. St. Wis. § 1862, the provisions of the ordinance there under review, by force of the statute, became part of the law of the incorporation of the railway company, and for violation of such provision an action could be maintained by the attorney general to vacate the charter or annul the existence of the railway company, under the provisions of Id. § 3241. Applying the doctrine of that case to the one in hand, the most that can be said is that the conditions of the assent of the city to the use of its streets inhere in and are part of the law of incorporation of the defendant water company. None the less, however, are its franchises derived from the legislature, and not from the municipality. It is also to be noticed that there is a marked difference in the statute under consideration in that case and those in question here. Section 1862, there considered, provides that 'any municipal corporation * * * may grant to any such corporation [a street-railway corporation] such use, and upon such terms as the proper authorities shall determine, of any streets or bridges. * * * Every such road shall be subject to such reasonable rules and regulations * * * as the proper municipal authorities may by ordinance from time to time determine.' There the legislature does not directly grant to the railway corporation any power to use the streets, but delegates to the municipality the right to grant the power. Here the power is in terms conferred by the legislature upon the water company, subject to the assent of the municipality. There the street railway is subject to constant municipal control. Here the water company is independent of municipal direction except in the use of the streets. It is, I think, clear that the power possessed by the city of Oconto was only to yield its assent to a legislative grant of the

use of its streets, and to contract for a supply of water. The franchises .of the water company were conferred by the legislature of the state, and not by the ordinance of the city.

"The question then recurs, what rights passed to Andrews & Whitcomb under the instruments of transfer and their foreclosure? By their terms they convey or assign only such rights and privileges as were granted the water company by the ordinance of the city. No other franchise or rights are attempted to be conveyed. If the right to the use of the streets may be said to have proceeded from the municipality, it was, standing alone, a mere easement. The transfer of such naked right could not carry with it the ownership of the mains, nor the title to the plant as an entirety, nor the franchise to operate the plant, nor to the land upon which the plant was situated. So that if it be true, as is here claimed, that a naked franchise is transmissible, that the franchise is the main and the plant the incident, and that a transfer of the former carries with it the title to the tangible property essential to its use and beneficial enjoyment, it still remains that here there was no transfer of the franchise to operate the plant, and consequently no transfer of tangible property. It therefore results that the claim of Andrews & Whitcomb to the plant is unfounded in law, and its possession by them wrongful as against the complainant."

W. H. Webster, for appellants.

George H. Noyes, for appellee.

Before WOODS, Circuit Judge, and BUNN and BAKER, District Judges.

WOODS, Circuit Judge (after stating the facts). Without regard to the question whether the Oconto Water Company received its franchises directly from the state, or indirectly through the city of Oconto, by force of the ordinance which purported to grant them, we are of opinion that the mortgage in question may be upheld. The appellants, it is not disputed, advanced large sums of money to the water company in the belief that they were receiving a valid security; and, while they are presumed to have known the law, it is not to be presumed, if there is reasonable escape from it, that either party to the transaction intended a vain thing. "Interpretatio facienda est ut res magis valeat quam pereat;" and other familiar maxims lend support to the requirement that a contract or deed shall be so construed as to have effect rather than so as to be made void. By the literal terms of the mortgage and of the decree of foreclosure, upon which the title of the appellants depends, there was a conveyance or assignment of "all the rights, privileges, immunities, franchises, and powers, of whatever name or nature, which were granted in and by that certain ordinance," etc., and if, upon a proper interpretation of the statutes touching the question, no mortgagable right, privilege, or franchise was granted in or by the ordinance, as distinguished from a direct grant by the state, then by a strict construction the mortgage was, as it was held to be, ineffective and meaningless. But not by the words alone should a writing be interpreted. "The rule is to regard the intention, rather than the words;" and here the evident intention, deducible from the whole instrument, was to mortgage the rights and franchises which the ordinance granted in terms, or which it purported to convey. The resolution whereby the water company declared its acceptance of the ordinance, and "of the franchise thereby granted," shows that both

parties entertained an equally broad and generous view of the powers of the common council of the city in the premises; and, when the deed of trust came to be drawn, it was only natural that for certainty of description reference should be made to the ordinance by which the rights of the company were defined, and, as the parties supposed, were granted. And even if this supposition was mistaken, must it be held that the entire purpose of the parties failed and that notwithstanding the covenant of the water company that it was "the owner and holder," and had "good right and lawful authority" to make transfer and sale "of said rights, privileges, immunities, franchises, and powers," "in the manner aforesaid," yet the instrument is a total nullity? Indeed, why should it not be held that by that covenant the water company is estopped to deny that its franchises were granted by the ordinance? Or must it be said that the covenant covers only rights and franchises which were granted by the ordinance, and, like the granting clause, is itself void because no franchise came to the company in that way? It would seem more reasonable, the ordinance having been made a part of the deed by reference, as if copied into it, to treat the covenant as covering the rights and privileges named in the ordinance, whether derived from one source or another. To say the least, upon the whole instrument, it is only reasonable and in accord with the canons of construction to read the expression, "which were granted," etc., as if it were, "which in terms were granted unto the said Oconto Water Company in and by that certain ordinance," etc. The added words are fairly implied, and the addition, without doing violence to any part of the writing, gives effect alike to the words of grant and covenant, and accomplishes the evident purpose for which the deed was executed.

But, if compelled to put upon its terms a strict and literal construction, we should still consider the mortgage valid, because we are not able to agree that the Oconto Water Company, by force of the ordinance, received no right, privilege, or franchise which was capable of being mortgaged, and which could be properly described as granted in or by the ordinance. While "it is essential to the character of a franchise," as was held in Bank v. Earle, 13 Pet. 595, "that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the state," and while the right to the use of the public streets of a city by a gas company or water company, for the purpose of laying down its pipes, is generally considered to be such a franchise, it is well settled that the legislature of a state may confer the power to grant such franchises upon municipal corporations; though, when so granted, they are, nevertheless, to be regarded as derived from the state. The question here, therefore, is not whether the franchises of the Oconto Water Company were obtained from the state; they necessarily came, directly or indirectly, from that source. It is whether or not the common council of Oconto had been given the power to grant such franchises, and in this instance did grant those named in its ordinance. Without that ordinance, it is clear the water company could not

lawfully have laid its pipes in the streets of the city, nor have put into practical effect its "franchise to operate the plant,"—if it can be said to have had such franchise, by reason merely of its act of incorporation, and before the ordinance was passed. The city of Oconto, by its own charter, had the power, and therefore was under the duty, of caring for the public health. That power it could employ in any reasonable way; if it chose, for instance, by contracting for a water supply through pipes laid in the streets. The making of such a contract would, of necessity, carry with it the right, on the part of the contractor, to lay the pipes and to operate the plant. Such right is a franchise, and, the making of the contract operating by necessary implication as a grant of the privilege or franchise, the power given to make the contract was power to grant the franchise. But, besides the power to provide for the health of its inhabitants, the city of Oconto had the express power, apparently not brought to the attention of the court below, "to provide for the erection of waterworks for the supply of water to the inhabitants of the city." We do not agree with the suggestion of counsel that by this provision the city had no right to contract for a supply of water, and was authorized only to construct and operate a plant of its own. The authority extended to any reasonable method; and it follows that, before the Oconto Water Company was incorporated, the city of Oconto, by its own charter, had power, from the state, to grant franchises like those in question to any person or body capable of receiving them. By its act of incorporation the Oconto Water Company came into being, endowed, not with the right to establish and operate waterworks in Oconto, but with capacity to receive and exercise that right or privilege upon such terms as the city should consent to grant. But, though capable of receiving, it could acquire no complete or effective right or franchise without the consent, and there is no impropriety, legal or verbal, in saying without the grant, of the city. The ultimate source of such franchises in all cases being the state, the difference between a municipal power to grant them and authority to contract for or to consent to the exercise of them is a difference of words rather than of substance. The language of the court of appeals of New York in the case of People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, is pertinent. Speaking of the Broadway Surface Railroad Company, the court said:

"On May 13, 1884, that company filed articles of association and became incorporated as a street railroad company under the provisions of chapter 252 of the Laws of 1884, a general act passed to authorize the formation of such corporations, pursuant to the mode introduced by the amendment to the constitution of 1874. By such incorporation the company became an artificial being, endowed with capacity to acquire and hold such rights and property, both real and personal, as were necessary to enable it to transact the business for which it was created, and allowed to mortgage its franchises as security for loans made to it, but having no present authority to construct or operate a railroad upon the streets of any municipality. This right, under the constitution, could be acquired only from the city authorities, and they could grant or refuse it at their pleasure. The constitution not only made the consent of the municipal authorities indispensable to the creation of such a right,

but, by implication, conferred authority upon them to grant the consent, upon such terms and conditions as they chose to impose, and upon the corporation the right to acquire it by purchase."

So, here, not by reason of a constitutional provision, but by statute, the ultimate efficient right could be acquired only by act and consent of the city authorities, which they could grant or refuse at their pleasure.

Whether or not, and to what extent, the mortgage of the franchises covers the plant of the company, need not now be considered.

The objection is made that the statute authorizes an appeal only from an "interlocutory order" of injunction granted "upon a hearing in equity;" that the order in this case was a preliminary one, made upon a prima facie showing, and is not appealable; but we concur in the opinion of the court of appeals for the first circuit that the statute was intended to extend the right of appeal "to all that class of interlocutory orders or decrees [of injunction] which interfere with the possession of property or operate in the restraint of trade." Richmond v. Atwood, 5 U. S. App. 151, 2 C. C. A. 596, and 52 Fed. 10. The order granting an injunction should be set aside, and it is so ordered.

----

## On Rehearing.

(June 11, 1894.)

Before HARLAN, Circuit Justice, WOODS, Circuit Judge, and BUNN, District Judge.

WOODS, Circuit Judge. "A rehearing is asked for the purpose," says the petition, "of ascertaining definitely whether the following material questions are involved in the appeal, and, if so, whether they have been in whole or in part determined by the opinion filed or the decision rendered upon the hearing: First. Does the so-called 'mortgage of the franchise' cover the plant and other tangible property of the Oconto Water Company now in the hands of the receiver, and, if so, to what extent? Second. Should the order granting the injunction be wholly set aside, or only modified so far as it affects the rights or interest of Andrews and Whitcomb in the franchise? Third. Should the one hundred thousand dollars of bonds ordered delivered over to the clerk of the court as void be returned to Andrews and Whitcomb? Fourth. Was the so-called 'mortgage of the franchise' a valid instrument? Fifth. If such instrument was valid, was the same so foreclosed, and the franchise covered thereby so sold, as to give to Andrews and Whitcomb the title to, and right of possession of, any property held by the receiver?"

We do not deem it necessary, or perhaps proper, to speak more definitely in respect to any of these questions. The granting or refusal of an injunction or restraining order pendente lite has always been a matter of judicial discretion on the part of the court

or judge whose order was sought.     If refused in the first instance, it might be granted at a later stage of the case or at the final hearing, and, if granted when asked, it might afterwards be revoked or modified, and at the final hearing be denied or made perpetual; and we are of opinion that it was not intended by the recent statute, which for the first time gave a right of appeal from interlocutory orders of injunction, that a decision upon the appeal from such an order should be conclusive upon the court in the further progress or in the final determination of the case.     All that should be conclusively determined by such an appeal, we think, is that the order appealed from was a proper one when made, and therefore should be affirmed, subject to the discretion of the court thereafter to modify or annul it; or that, when made, the order was an improper one, and should be reversed or modified, subject likewise to the discretion of the court, upon a new or further showing, invoking the application of different rules or principles, to reinstate the order in the original or modified form, and at the final hearing to consider or reconsider all questions involved, whether of law or of fact, and give such judgment or decree as should seem right. From that judgment the aggrieved party would of course have the right to appeal and to obtain thereon a decision in all respects final. Notwithstanding the rule in respect to final judgments that, on a mandate from the supreme court affirming a decree, the circuit court must execute its decree as affirmed (Durant v. Essex Co., 101 U. S. 555), it has been decided that the affirmance of an interlocutory order of injunction does not operate to deprive the circuit court of its inherent power to suspend the injunction, whenever the ends of justice call for the exercise of such power (Edison Electric Light Co. v. U. S. Electric Lighting Co., 59 Fed. 501, 8 C. C. A. 200); and by the same principle, we think, a decision on appeal reversing or modifying such an order should be deemed conclusive only in respect to the particular order reviewed, and that in the further progress and upon final hearing of the case in the circuit court the opinion and ruling on the appeal should be regarded as advisory only,—more or less controlling, according to the circumstances.     In this case the circuit court looked upon the mortgage of the appellants as a nullity.     For the reasons given in the opinion, this court reached the opposite conclusion.     But if, instead of the positive conviction declared, we had entertained grave doubt upon the point on which the question turned, it would have been our duty to rule just as we did, because an injunction before final hearing should be allowed only when the right to it is clear. Standard Elevator Co. v. Crane Elevator Co., 6 C. C. A. 100, 56 Fed. 718.     It is plain, therefore, that our decision did not involve, and should not be regarded as, a technical and final adjudication, for the purposes of the case, of the points which we considered in reaching our conclusion that the order of the circuit court was wrong, or of the questions propounded in the petition for rehearing.

The question remains, what should be the scope of the mandate?  It is not necessary to consider whether or not under the statute an appeal may be had from an order appointing a receiver.  On that

question, see Construction Co. v. Young, 59 Fed. 721, 8 C. C. A. 231; Dudley E. Jones Co. v. Munger, etc., Co., 2 U. S. App. 188, 1 C. C. A. 668, 50 Fed. 785; Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10; Pennsylvania Co. v. Jacksonville, etc., Ry. Co., 55 Fed. 131, 5 C. C. A. 53; American Const. Co. v. Pennsylvania Co., 148 U. S. 372, 13 Sup. Ct. 758. The appointment in this case was of a receiver of the property of the Oconto Waterworks Company, and of that the appellants cannot complain. The wrong done them was in ordering them to surrender to the receiver the possession of the waterworks plant of which they were in possession, claiming title under the foreclosure sale, in directing the receiver to take possession thereof, and in enjoining them against asserting title or claim to the property. These features of the order are prohibitory or mandatory in character, and subject to review upon appeal. The order whereby certain bonds were required to be delivered to the clerk involves no present harm to either party, and need not be disturbed. The mandate therefore will be that those portions of the order of the circuit court whereby the receiver was directed to take and the appellants to surrender possession of property, excepting the bonds aforesaid, and the appellants enjoined from asserting title, be set aside, and that the possession be restored to the appellants, unless for some cause, not apparent in the record before us, the possession of the receiver should be continued. The petition for a rehearing is overruled.

BAKER, District Judge, who participated in the original decision, concurs.