PENNSYLVANIA CO. FOR INSURANCE ON LIVES AND FOR GRANT-ING ANNUITIES v. JACKSONVILLE, T. & K. W. RY. CO. et al., (AMERI-CAN CONSTRUCTION CO., intervener.)[1]

(Circuit Court of Appeals, Fifth Circuit. January 16, 1893.)

No. 78.

1. APPEAL—TRANSCRIPT—AUTHENTICATION.

Rule 14 of the circuit court of appeals for the fifth circuit requires "a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case" (47 Fed. Rep. vii.) to be sent up on appeal. *Held*, that an authentication stating "that the foregoing is a true, full, and complete transcript of all the papers, orders, and decrees from the files and records of my office" is sufficient, but, to be strictly accurate, the authentication should follow the language of the rule.

2. RAILROAD COMPANIES—BONDS AND MORTGAGES—FORECLOSURE—COLLUSION.

Where a railroad company is sued by a few minority stockholders, and a receiver is asked, which suit is opposed by a great majority of stockholders, it is perfectly proper for the mortgage bondholders, upon default in the payment of their bonds, to institute a foreclosure suit, and have a receiver appointed, and thus to control any litigation which might withdraw from the corporation the mortgaged property; and it is not fraudulent or collusive for the officers of the corporation to admit the truth of the allegations of the bondholders' bill.

3. APPEAL TO CIRCUIT COURT OF APPEALS—INTERLOCUTORY ORDER—INJUNCTION.

Where, on the motion of an intervener, the proceedings in an equity case in the United States circuit court are stayed, and a receivership vacated until the further order of the court, this is an interlocutory order granting an injunction, within the meaning of section 7 of the act of March 3, 1891, which allows an appeal in such case to the circuit court of appeals.

4. SAME—INTERVENTION—STAY OF PROCEEDINGS.

A stockholder who has brought suit against the corporation, asking to have a receiver appointed, cannot, by intervening in a subsequent suit by the mortgage bondholders asking a foreclosure and the appointment of a receiver, have such suit stayed until the stockholders' suit is first determined, unless the case is an extraordinary one, and such a proceeding is justified within sound judicial discretion.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. Suit by the Pennsylvania Company for Insurance on Lives and for Granting Annuities against the Jacksonville, Tampa & Key West Railway Company to foreclose a mortgage. The American Construction Company filed a petition of intervention, praying that the temporary order appointing a receiver be set aside, and that all further proceedings in the suit be stayed. The circuit

[1] Rehearing denied January 30, 1893.

court granted the petition, and stayed the proceedings until further order.     Complainant appeals.     Reversed.

E. H. Farrar, B. F. Jonas, E. B. Kruttschnitt, John W. Simpson, Richard H. Leggett, and Geo. F. Baer, for appellant.

H. Bisbee and Wm. Wirt Howe, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge.    The appellee, the American Construction Company, moves to dismiss this appeal on the following grounds: (1) Because there is no properly authenticated transcript of the record filed in this court, as required by the rules thereof.    (2) Because this court has no jurisdiction to entertain the appeal from the order appealed from.     (3) Because it appears from the papers and pleadings on file in this court that the suit is a collusive one between the appellant and the defendant railway company.    The language of the authentication in this case is "that the foregoing is a true, full, and complete transcript of all the papers, orders, and decrees * * * from the files and records of my office."    Section 997 of the Revised Statutes of the United States requires "an authenticated transcript of the record;" rule 8 of the supreme court directs "a true copy of the record and of all the proceedings in the cause" to be transmitted; and our rule 14 requires "a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case."    There is in this case no suggestion of a diminution of the record, and an examination of the record discovers on its face no indication that it is incomplete.    All the papers, orders, and decrees filed and entered in the clerk's office in the given case would seem to embrace the whole record.    It is true that papers may be filed that are not so marked, and may be so marked, though not properly a part of the files.

The objection here, though general in its terms, cannot be that the clerk has sent up too much, and it is difficult to conceive what he can have omitted when he has sent us "a true, full, and complete transcript of all the papers, orders, and decrees" in the given case. It may be well to impress on clerks of the trial courts that in the absence of a controlling stipulation by the parties, or written instructions from the plaintiff in error or appellant filed in the case, transcripts in cases of appeal or writs of error should meet the requirements of our rule 14, and their certificates of authentication follow the language of our rule, and show that the transcript transmitted is "a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case."

On the 23d July, 1892, the appellant, the Pennsylvania Company for Insurance on Lives and for Granting Annuities, exhibited its bill of complaint to the circuit court for the northern district of Florida, showing that it was the trustee in a consolidated mortgage made by the Jacksonville, Tampa & Key West Railway Company, a corporation created and existing under the laws of Florida, on about 200 miles of road, with its equipment, and other property de-

scribed in the mortgage, to secure an issue of 4,000 bonds of the denomination of $1,000 each. Said railway company was the sole defendant in the bill. It was shown to be a consolidation of three other constituent corporations, each of which had constructed and owned a portion of its railroad and other property, and had placed a first mortgage on its respective portions, which was still outstanding and binding, and all aggregating $2,216,000; that 4,000 of consolidated bonds were issued under the said consolidated mortgage, and that 2,216 of said 4,000 were retained by said trustee to retire said first mortgage bonds; that the interest on these 2,216 bonds had been duly paid, and the interest on the first mortgage bonds of the constituent companies duly protected; that the remaining 1,784 of the said consolidated bonds had been issued, and sold in part and hypothecated in part to pay and secure the floating indebtedness of the defendant railway; that, on a large number of these, three installments of interest had matured, and payment had been demanded at the proper office and payment refused; that by the terms of said mortgage such continued refusal to pay interest put said railway in default, and authorized said trustee to proceed to foreclose said mortgage; that a number of the holders of said bonds and interest coupons had in writing requested said trustee to ask a foreclosure of said mortgage; that, besides the consolidated bonds aforesaid and the said bonds of the constituent companies, the defendant railway company had outstanding certain bonds known as its collateral trust bonds, aggregating $3,673,000, which are inadequately secured by the pledge or deposit of certain bonds and stock of the Florida Southern Company; that an installment of interest on these collateral trust bonds, amounting to $73,460, will become payable August 1, 1892, which the defendant railway company is unable to pay, and on which it must make default; that, by the terms of the pledge agreement securing said collateral trust bonds, the trustee thereunder will become entitled to declare the whole principal sum of said bonds due and payable, and to foreclose the lien of said pledge, and to enter judgment against the said defendant railway company for any deficiency that may remain unpaid upon the said bonds; that the floating indebtedness amounts to more than $1,800,000, of which between $300,000 and $400,000 is unsecured, and the remainder is secured by the pledge as collateral of certain of said consolidated mortgage bonds, of which indebtedness a large part is now due, and another large part is due and payable upon demand; that interest upon a large part of said indebtedness is long past due, and that the defendant railway company cannot pay either said interest or the said overdue principal; that the property covered by said mortgage to complainant is inadequate security for the bonds issued thereunder; that said defendant railway company is insolvent; that to protect the rights of complainant and of said bondholders and other creditors, and to preserve and keep together the property of the defendant railway company, so that its duty to the public as a common carrier may be duly performed, a receiver ought to be forthwith appointed of all the property, rights, and franchises covered by said consolidated

mortgage. The prayer is for foreclosure subject to the prior liens, for a receiver, and for general relief.

This bill, and affidavit of Charles C. Deming, vice president of the defendant company, supporting its allegations, and the consent of the defendant company to its being exhibited, and admission of the truth of the allegations of the bill expressed by its solicitor, A. H. Joline, Esq., there personally present, being exhibited to one of the judges of said circuit court on the said 23d day of July, 1892, a preliminary decree was passed granting the receivership as prayed for; and, the parties uniting in the request that, "if the said application be granted, Robert B. Cable, Esq., be named as such receiver," said Cable was appointed with the reservation that the said appointment of Robert B. Cable, Esq., as receiver is provisional to the extent that any person or party having an interest in the property of the defendant railway company may show cause within 30 days from date of said order why the said appointment should not be confirmed. The appointment was also made so far provisional as not to affect or forestall any action the court or any of its judges may hereafter see proper to take on any bill theretofore filed in said court against said railroad company, wherein prayer had also been made for a receivership.

On July 27, 1892, said receiver, Robert B. Cable, took the oath as such receiver. On July 28, 1892, the appellee, the American Construction Company, presented its petition of intervention in this case to another of the judges of said circuit court, showing that it had on July 6, 1892, exhibited its bill in said court against the defendant railway company and other parties, with exhibits and affidavits, to which it prayed reference as often and fully as necessary, in which bill it had asked for a receivership, injunction, and appropriate ultimate relief; that a temporary restraining order had been granted as prayed for by said intervener in its said bill, and the defendant company was ordered to show cause on or before the 11th day of said month why the receivership, as prayed for by it, should not be granted; that on the said 11th day of July, 1892, the said railway company moved the court for further time to prepare to show cause why a receiver should not be appointed, representing that it could show good cause; that on such representation the time was extended to the 28th day of July, 1892; that afterwards, to wit, on the 23d day of said month, the defendant railway company, by collusion with the complainant herein, imposed on the judge making said order appointing said Cable receiver; that said Cable is the manager and appointee of the directors of said company against whom intervener in its bill had made charges of gross fraud, mismanagement, and diversion of the funds of said company; that said directors are the owners of the floating debt of said company, and are the very persons (if any have applied) who have applied to complainant to bring this suit; that it fully appears from the pleadings and proceedings that the said railway company and its directors control both the defendant and complainant in this suit; and intervener prays that the order appointing a receiver in this case be set aside and vacated, and that all proceedings in this case

be stayed until the further order of said circuit court; and thereupon the order from which this appeal was taken was made on the 4th day of August, 1892, and is in these words:

"This cause came on to be heard on the 28th day of July, 1892, on the motion of the American Construction Company, which had intervened therein, and which is also complainant in another suit in equity against the said defendant and others, in the bill filed on the 6th day of July, 1892, praying for the appointment of a receiver. The said motion and petition of intervention of the said American Construction Company prayed for an order vacating the order entered in the above-entitled cause on the 23d day of the month of July aforesaid, appointing Robert B. Cable, Esq., receiver, and staying all further proceedings in said cause. On consideration thereof, and of the said several bills in equity and the affidavits and exhibits in support thereof, it is ordered, adjudged, and decreed that the aforesaid order appointing Robert B. Cable receiver of the property of the Jacksonville, Tampa & Key West Railway Company be, and the same is hereby, set aside and vacated, and all further proceedings in the above-entitled cause stayed until the further order of this court."

The proceedings in the appellee's suit, referred to in its petition of intervention, are made part of the record on this appeal, and a careful examination of those proceedings, and of the proceedings in this suit, has satisfied us that the third ground on which we are asked to dismiss this appeal is not well taken. Such examination has not only not suggested to our minds that this is a collusive suit, but, on the contrary, it clearly appears to us that no deception was practiced on the court in procuring the order made July 23, 1892. The terms of that order show that the judge making it had actual knowledge that such proceedings were pending, and providently guarded against any embarrassment likely to arise from two judges of the court acting separately on separate cases, involving more or less the same subject. And if the allegations of the appellant's bill are true, within the knowledge of the vice president of the defendant railway company, his making an affidavit to the facts, and the defendant's admissions of the truth of the allegations, should provoke no unfavorable criticism from a court of equity; and the litigation shown to have been instituted by a very small minority of stockholders against the owners of the great majority of the stock and the pressure for a receiver in that case made it highly proper, if not absolutely necessary, that the appellant should institute and control the litigation which should withdraw from the control of the company the most productive part of its property and that on which the consolidated mortgage rested, and the defendant company and its directors and officers individually, being seriously threatened with being disabled with the hostile attitude of the minority stockholders from meeting the obligations of the company as asumed in the consolidated mortgage, might very well, in good faith and to their credit, furnish to the complainant information and evidence of the true state of affairs. The appellee, the American Construction Company, contends that this court has no jurisdiction to entertain this appeal, urging that the order from which the appeal is taken is an interlocutory order not granting or continuing an injunction. The appellant insists that it is clearly an order granting an injunction, and hence within the seventh sec-

tion of the act of March 3, 1891, authorizing such appeals; and contends, further, that it is so decisive of the only issue made by the appellee as to bring it within the true construction of the statutes authorizing appeals from final decrees.

The intervener's specific prayers were that the order appointing a receiver be set aside and vacated, and that all proceedings in the cause be stayed until the further order of this court, both of which were granted by the order from which the appeal is taken. The manifest effect of that order was, so far as this suit is concerned, to restore the property to the custody of the defendant company, and suffer the earnings on which complainant held a lien to continue to run to waste by being diverted into other channels. If we may consider, in connection herewith, the probable or actual action of the court in the other case affecting this property, it does not, in our view, materially change the situation. We are, however, relieved of the duty of determining whether the order in question is a final decree, in the sense that would authorize an appeal from it as such by the construction we place on that part of the order granting a stay of all further proceedings in the case. Our views as to what decrees in equity should be considered final decrees, within the meaning of the statutes giving appeals from final decrees, have been quite fully expressed in Grant v. Railway Co., 50 Fed. Rep. 795, 1 C. C. A. 681, and in Dufour v. Lang, 54 Fed. Rep. 913. In our opinion, to order, at the prayer of one party, that all further proceedings in the cause shall be stayed until the further order of the court, is to grant an injunction, within the meaning of the seventh section of the act of March 3, 1891. It follows that the appellee's motion to dismiss this appeal must be denied.

The appellant assigns as error:

"(1) That the circuit court erred in rendering and entering the decree or order of August 4, 1892, whereby it stayed any further proceedings in the above-entitled cause till the further order of that court; wherefore the said Pennsylvania Company for Insurance on Lives and for Granting Annuities prays that the said decree or order entered and rendered by the circuit court of the fifth judicial circuit of United States in and for the northern district of Florida may be vacated, and such decree entered in lieu thereof as may be consonant with the principles of law and equity."

The order staying proceedings in this case carried with it necessarily the other branch of the order vacating the receivership. It is urged on behalf of appellant that the consolidated mortgage covered the income of the property, and expressly provided that appellant should be entitled to have a receiver appointed if it became necessary to resort to the courts to enforce the obligations of the defendant railway company. The appellee contends that, though such is the contract between the parties, the matter rests in the sound discretion of the chancellor; and this contention is supported by the cases cited on the brief of appellee's counsel. Pullan v. Railroad Co., 4 Biss. 35; Williamson v. Railroad Co., 1 Biss. 198; Tysen v. Railroad Co., 8 Biss. 247; Union Trust Co. v. St. Louis, I. M. & S. R. Co., 4 Dill. 114.

The appellee contends, further, that after its bill was filed, a restraining order granted, and an order to show cause why a receiver

should not be appointed at its suit, the property of the defendant company was drawn within the jurisdiction of the court in that case, and, the court having thus acquired jurisdiction of the cause and subject-matter, the appellee, as complainant in that suit, had the right to prosecute its suit, and to obtain the relief asked, if it established its case, in that suit, and could not be forced into another suit, even in the same court. In our opinion this contention is not supported by the cases cited. The doctrine is familiar that, between courts having concurrent jurisdiction of parties and subject-matter, the court which first takes jurisdiction holds it to the exclusion of the others; and the cases cited illustrate this doctrine, but do not hold, or, by analogy, lend support to, this contention of appellee. As attempted to be applied to this case, we are of the opinion that this contention can find no support from reason or from authority. The appellant is trustee in the consolidated mortgage covering 200 miles of the most productive part of the defendant railway's railroad. Said railway company is shown to be claiming to own, and is operating, nearly twice as much other railroad in an embarrassed condition, and to be running two other shorter lines of transportation, which the intervener in its suit charges are operated at a loss during a large part of the year, and the burden borne by the defendant railway company. The bonds secured by this mortgage aggregate $20,000 to the mile on said 200 miles, greater, in all reasonable probability, than the value at foreclosure sale of all the property covered by the mortgage. The appellee is only interested as a stockholder, and claims to own about one eighteenth of the stock, while the stockholders charged by it with fraudulently controlling the directors own more than sixteen eighteenths of the stock, all of this being stock in a property bonded to or beyond its full present value. Can such a minority stockholder in such a property so precipitate a litigation with the other stockholders as to require that the bondholders, whose interest is not being paid, shall be stayed in their proceedings to enforce their lien until this fight between the stockholders is fought out, or must the bondholders in such a case be required, if they proceed at all, to become interveners in the stockholders' battle? The process is extraordinary; its use must rest in sound judicial discretion.

It seems clear to us that in this case the appellant was and is entitled to have this property taken possession of by the court through the appointment of a receiver, to have it preserved, and its earnings audited, reported, and applied according to the rights of the parties under the mortgage, as the same shall be settled during the progress and at the termination of the suit by the proper decrees of the court. We are of opinion that the order granting the stay of proceedings should be reversed, the stay dissolved, and the receivership granted July 23, 1892, at the suit of the appellant, be restored, and the orders in reference to said receivership be had in this case, and reports of the operations, earnings, and expenses of the property covered by said consolidated mortgage be made to the court in this case.

It is left with the circuit court to determine what person is the proper one to execute the office of receiver in this case, and

to continue Receiver Cable, or to appoint a more suitable person in his place, as the relations of the parties and the character and condition of the property may, in the judgment of that court, require.

It is therefore ordered that the motion to dismiss the appeal be overruled; that the decree appealed from be reversed; the stay of proceedings dissolved; the receivership restored; and the circuit court directed to proceed in this case in accordance with the views expressed in the foregoing opinion; and that the appellee, the American Construction Company, pay all the costs of this appeal.